IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANGEL MEDICAL CENTER, INC., )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO.<br>2:13-CV-00034<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Susan Williams ("Williams") who was adversely affected by such practices. The Equal Employment Opportunity Commission (the "Commission") alleges that Angel Medical Center, Inc. ("Defendant") failed to provide Williams with a reasonable accommodation for her disability, and subsequently discharged her from her position as a Registered Nurse because of her disability, cancer, in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of North Carolina, Bryson City Division.

## PARTIES

3. Plaintiff is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, a North Carolina corporation, has continuously been doing business in the State of North Carolina and the City of Franklin, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Williams filed charges with the Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. Defendant hired Williams on December 7, 2009 as a Registered Nurse ("RN") to work in Defendant's Medical/Surgical Services Department. Williams was employed full-time on the evening shift. Defendant's full-time schedule for a RN consisted of three 12 hour shifts per week for a total of 36 work hours per week. At all relevant times, Williams was qualified to perform the essential functions of her position and performed her duties at a level that met Defendant's legitimate expectations.

9. On or around December 9, 2011, Defendant engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b). As described more fully below, Defendant discriminated against Williams, who has a disability as defined by the ADA, by failing to provide her with a reasonable accommodation and by terminating Williams because of her disability.

10. During all times relevant to the allegations in this complaint, Williams had an actual disability as defined by the ADA. Specifically, in October 2011, Williams was advised that previously diagnosed cancer had spread and metastasized to her liver, and that she would require surgery. Due to her cancer and the treatment thereof, Williams suffered from extreme fatigue, nausea and vomiting. Thus, Williams was substantially limited in one or more major life activities, including but not limited to normal cell growth.

11. Upon learning of the liver cancer and upcoming surgery, Williams informed Respondent about the surgery and her need for time off from work. At the time, Williams was not eligible for leave under the Family and Medical Leave Act. In late October 2011, Williams met with Defendant's Director of Nursing and Vice President of Human Resources who told Williams that she needed to report back to work by December 2, 2011, or she would be terminated.

12. On November 2, 2011, Williams underwent surgery for liver cancer. On or around November 23, 2011, Williams received medical clearance from her doctor to return to work on December 1, 2011, with no restrictions.

13. During the relevant period, Defendant's work week began on Saturday and ended on Friday. The nursing staff in the department in which Williams worked self scheduled for six week periods. Approximately three weeks before a period was to begin, the nursing staff was given a six week calendar for which to schedule their work hours. Nursing staff wrote in the days they desired to work on the calendar. The schedule was then reviewed and approved by Defendant's management. In order to make a change to the approved schedule, a nurse had to find someone to work for him/her, and then the Charge Nurse would note the change on the calendar. The number of nurses on each shift was determined by the number of patients in the unit. Full time RNs worked three days per week, 12 hours per day, for a total of 36 hours per week. Williams was a full time RN.

14. On or around November 29, 2011, Williams met with the RN responsible for scheduling to create a work schedule. At the time of the meeting, the nursing schedule for the then current period, covering from October 29 through December 9, 2011, had already been finalized. Williams advised the scheduling RN that she had five chemotherapy treatment sessions that she needed to complete, and that on the weeks she had a chemotherapy treatment she would not be able to work Monday through Thursday.

15. Williams and the scheduling RN created a schedule for Williams based on Williams' return to work date, shifts that were available on the pending schedule, and Williams' chemotherapy schedule. Based on all of these factors, Williams was scheduled to work on December 1, 2, 3 and 9, 2011. Williams was prepared to add additional days to her work

4

schedule as additional days became available due to cancellations of, or modifications to, other nurses' schedules. Such scheduling changes were a common practice in Williams' department.

16. Williams returned to work on December 1, 2011 and worked each of her shifts on December 1, 2 and 3. On her last scheduled work day, December 9, 2011, Williams was discharged. Specifically, during a meeting attended by Williams and Defendant's Vice President of Human Resources, the Vice President of Human Resources told Williams that Williams was not meeting her obligation to work "full time" because of conflicts with her chemotherapy, and that she was terminated.

17. During the December 9, 2011 meeting, Williams asked that Defendant be flexible, and suggested possible accommodations that would enable her to work 36 hours during each week, including changing her chemotherapy schedule or transferring to another department with Defendant's network. Defendant denied Williams' requests and did not discuss any other possible accommodations with Williams. At all relevant times Williams was a qualified individual with a disability and could have performed the essential functions of her job with a reasonable accommodation.

18. Defendant refused to provide Williams with an accommodation for her disability for the period from December 1, 2011 through the completion of her chemotherapy treatments which ended in March 2012. Rather, Defendant discharged Williams because of her disability when it concluded Williams was unable to work a full time schedule due to her chemotherapy treatments. Both Defendant's failure to provide Williams with a reasonable accommodation and subsequent termination of Williams' employment because of her disability, were in violation of the ADA.

19. The effect of the practices complained of above has been to deprive Williams of

5

equal employment opportunities and otherwise adversely affect her employment status because of her disability.

20. The unlawful employment practices complained of above were intentional.

21. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Williams.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from discriminating against individuals because their disabilities, including discrimination in hiring and firing; failing to provide reasonable accommodations; and any other employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled persons, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Williams whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu thereof.

D. Order Defendant to make Williams whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

E. Order Defendant to make Williams whole by providing compensation for past and

6

Case 2:13-cv-00034-MR-DLH   Document 1   Filed 09/25/13   Page 6 of 8

future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, humiliation, loss of enjoyment of life, loss of civil rights, and other non-pecuniary losses, in amounts to be determined at trial.

F. Order Defendant to pay Williams punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

This 25th day of September, 2013.

        Respectfully submitted,

        P. DAVID LOPEZ
        General Counsel

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel
        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        131 M. Street, NE
        Fourth Floor, Suite 4NWO2F
        Washington, D.C. 20507

        LYNETTE A. BARNES (NC Bar #19732)
        Regional Attorney
        Charlotte District Office
        129 W. Trade Street, Suite 400
        Charlotte, NC 28202

        KARA GIBBON HADEN (NC Bar #26912)
        Supervisory Trial Attorney

Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, NC 28202


**s/Edward O. Loughlin** _____
EDWARD O. LOUGHLIN (VA Bar #70182)
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, Suite 4NW02F
Washington, D.C. 20507
Telephone: (202) 419-0748
Facsimile: (202) 419-0739
E-mail: edward.loughlin@eeoc.gov


**ATTORNEYS FOR PLAINTIFF**